J-S93041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| J.G.M., | |
| Appellant | No. 1822 EDA 2016 |

Appeal from the Judgment of Sentence January 19, 2016
in the Court of Common Pleas of Bucks County
Criminal Division at No.: CP-09-CR-0007636-2014

BEFORE:  DUBOW, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED MARCH 31, 2017**

Appellant, J.G.M., appeals from the judgment of sentence imposed on January 19, 2016, following his jury conviction of one count each of involuntary deviate sexual intercourse with a child (IDSI), aggravated indecent assault, indecent assault, and corruption of minors.[1]  On appeal, Appellant challenges the weight of the evidence, the denial of his motion for a mistrial, and certain of the trial court's evidentiary rulings.  For the reasons discussed below, we affirm the judgment of sentence.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3123(b), 3125(a)(7), 3126(a)(7), and 6301(a)(1)(ii), respectively.

We take the underlying facts and procedural history in this matter from the trial court's August 16, 2016 opinion and our independent review of the certified record.

This case involves three instances of Appellant sexually abusing his 12-year-old stepdaughter, [j]uvenile O.B. (hereinafter "the victim"). During April and May of 2014, the victim lived with Appellant, her mother, and her younger half-brother . . . . The victim testified that she engaged in few extracurricular activities at school, and she enjoyed playing with various electronic devices, including her cellphone, laptop computer, and video game systems. Appellant was frequently responsible for taking care of the victim and her half-brother while the victim's mother worked the night shift as a nurse.

The victim testified that Appellant sexually abused her three separate times in April and May of 2014. Appellant communicated to the victim that the sexual contact was a punishment for the unpermitted use of her electronic devices.

The first incident occurred in April of 2014. The victim's mother was away working the night shift, and the victim was under the supervision of Appellant. The victim testified that Appellant reprimanded her for impermissibly using her electronic devices. As a punishment for using the electronics, Appellant forced the victim to strip off her clothes and masturbate in front of him. In addition to watching the victim strip and masturbate, the victim testified that Appellant also manipulated the victim's hand on her vagina and used his own hand to touch her vagina. The abuse took place in the upstairs master bedroom and lasted approximately [thirty] to [forty-five] minutes. The victim testified that, after the incident, Appellant told her "don't tell anybody" and "don't tell mom."

The second incident occurred on Mother's Day, May 11, 2014. During the day, there was a family gathering at the victim and Appellant's residence. The victim testified that, while the rest of the family was outside on the patio and she was sitting in the living room watching television, Appellant reprimanded her for watching inappropriate cartoons. As punishment, Appellant told her that she could either "give him a blowjob later that night or [she would] get all [her] stuff taken away." That night, after

the victim's mother went to sleep, Appellant summoned the victim to the downstairs guest bedroom, where Appellant sometimes slept because of his sleep apnea. Once inside the guest bedroom, the victim was again forced to strip out of her clothes. This time, however, Appellant took off his clothes as well. Appellant forced the victim to manipulate his penis with her hand and to perform oral sex upon him to the point of ejaculation. In addition, Appellant bit the victim's nipples and touched her vagina. The victim testified that she was ordered to clean up the ejaculate after he ejaculated. She got paper towels from the bathroom and wiped the ejaculate from her hand and from Appellant's penis. In addition, she spit some ejaculate into a paper towel. She then threw the paper towels into the trash can in the guest bedroom.

The third incident occurred in late May of 2014. The victim's mother was again away working the night shift at the hospital. The victim testified that Appellant called her into the family room and reprimanded her for the use of her electronic devices. She was again offered the choice of giving Appellant a "blowjob" or having all of her "stuff" taken away. Appellant called the victim to the upstairs master bedroom that evening. The victim was forced to strip out of her clothes and to perform oral sex on Appellant's penis. In addition, Appellant rubbed his penis against the victim's vagina, without penetration, and performed oral sex on the victim's vagina. The victim again cleaned up the ejaculate with a paper towel and threw out the towel. Appellant told her that he would do "awful things" to her if she told her mother, her friends, or anyone else about what he did to her.

In addition to the three instances of abuse, the victim testified that Appellant would show her pornography on both his iPad and her laptop computer. In addition, the victim, upon request from Appellant, showed Appellant pornographic images of people having sex on her laptop computer.

Following these instances of sexual abuse, the victim became "horrified of [Appellant]." She "felt awful" about what Appellant made her do and was unable to tell her mother what was happening.

A few days after the third incident, the victim told her friend, [j]uvenile J.A., about Appellant sexually abusing her. Afterward, the friend's mother informed Carol Quinlan, a social

worker . . . . about the abuse. On May 27, 2014, Quinlan spoke with the victim. She tearfully advised Quinlan that Appellant forced her to perform oral sex and other sexual acts as punishment for her impermissible use of electronic devices. Following the meeting, Quinlan called Childline; Bucks County Children and Youth and the Upper Southhampton Police then became involved in the case.

Later that day, the Bucks County Child Advocacy Center held a forensic interview with the victim. Jodi Kaplan, a child forensic interview specialist, conducted the interview, which was recorded. Kaplan testified that the interview format was non-leading in nature and based on nationally recognized methods of forensically interviewing children. At the interview, the victim again revealed that Appellant sexually abused her. During trial, the jury watched the recorded interview.

Following the forensic interview, the victim testified that her mother constantly pressured her to recant her statements. The victim's mother told her "a couple times a day" that she "ruined everything" and that her family "might lose the house." These statements made the victim feel "really upset and guilty" and she eventually recanted her original story. The victim's mother then notified Children and Youth of the recantation and drove the victim to the police station to recant. The victim testified that she recanted to "just make everything go away" and so her mother "wouldn't yell at [her] every day."

Shortly after the recantation, Appellant moved back into the home, which was in violation of a safety plan established by Children and Youth. When the police learned that Appellant had moved back into the home in violation of the safety plan, the victim was forced to move out of the house and live with her maternal grandparents.

In October of 2014, the victim met with Carol Quinlan and Officer Jessica Bloomingdale of the Warrington Township Police Department. During that meeting, the victim broke down and confirmed that her original statement was the truth. She admitted that her mother "made her lie about the incidents."

On May 30, 2014, police seized paper towels from the trash can in the guest bedroom in Appellant's home pursuant to a valid search warrant. Police also seized Appellant's iPad but found no pornography. In addition to the paper towels, the

seized contents of the trash can included the following: a diagnostic report for a printer, dated April 2, 2014; a back page of a victim booklet from the Child Advocacy Center; discharge instructions from Abington Hospital in the name of the victim's mother, dated January 1, 2014; a printed online newspaper article, dated January 3, 2014; and a printed recipe for chicken, dated January 28, 2014. Despite the presence of documents spanning months, the victim's mother testified that she emptied the can on a weekly basis.

The paper towels seized from the trash can in the guest room were sent to Bode Technologies, a forensic sciences laboratory, for DNA analysis. Cassidy Torgrimson, a forensic biology expert, testified that two of the paper towels tested positive for spermatozoa. Testing of one of the towels was indicative of saliva; however Bode Technologies did not have a confirmatory test for saliva. Vanessa Covert, a DNA analysis expert, testified that she tested the spermatozoa from the towels and that it matched Appellant's DNA profile. She also testified that the probability of selecting an unrelated individual with Appellant's DNA profile is one in [one point eight] quintillion in the U.S. Caucasian population, one in [one hundred] quintillion in the U.S. African-American population, and one in [eighteen] quintillion in the U.S. Hispanic population.

At trial, Appellant offered the expert testimony of Arthur Young, a forensic biology specialist at Guardian Forensic Sciences. In his testimony, Young relied on the report provided by the practitioners at Bode Technologies. Young stated that his lab offered a confirmatory test for saliva; however, Appellant did not have Young retest the evidence.

During trial, the victim's mother testified on behalf of Appellant; she testified that she did not believe the victim. Appellant testified on his own behalf and denied the allegations.

(Trial Court Opinion, 8/16/16, at 1-6) (record citations omitted).

The police arrested Appellant on December 18, 2014. On August 10, 2015, the Commonwealth filed a motion *in limine* to preclude Appellant from introducing evidence about the victim's mental health history and history of

viewing on-line pornography. A hearing on the motion took place on August 18, and September 21, 2015. At the hearing,

> [t]he Commonwealth argued that the victim's pornographic viewing history was protected by Rape Shield [Law, 18 Pa.C.S.A. § 3104(a)] and, in the alternative, not relevant. Appellant argued that the victim's pornographic viewing history went to motive, knowledge, and credibility. Appellant also sought to admit evidence of the victim's mental illness, statements made during family therapy sessions, and a fictitious story the victim wrote about a girl with a similar mental illness who was talked about as a liar.[2] The Commonwealth contended that this evidence was not relevant.
>
> At trial, [the] court precluded testimony regarding the victim's mental health medication or hospitalization. Statements made in family therapy sessions, as the well as the victim's fictitious story, were also precluded. The fact that the victim has a mental health diagnosis was admitted.
>
> [The trial court] concluded that viewing pornography was not covered by Rape Shield. However, [the] court noted before trial the lack of probative value of the specific content of the victim's pornographic viewing history. Before reaching this conclusion, [the trial court] held a pretrial hearing and thoroughly went over the pornographic websites and content offered by Appellant. The evidence offered by Appellant did not establish that the victim viewed specific images or videos. Appellant only offered pornographic websites that appeared on the victim's electronic devices. The websites currently featured images and videos of naked bodies and people engaging in sexual activity. Furthermore, no witness testified to the victim actually visiting the websites. Appellant's own expert explained that "we were not able to retrieve from the computer images that . . . the user saw." Thus, no foundation could be laid to establish what the victim actually viewed. At no point in the case did either side contend that the victim was ignorant about pornography.

---

[2] This Court has reviewed the record of the hearing and is unable to locate any discussions of record regarding the story.

At trial, [the court] reiterated that the victim's pornography viewing history lacks probative value and found that specific pornographic content viewed by the victim was not relevant. The fact that the victim looked at pornography on her own time did come in as evidence.

At trial, Appellant testified and was asked by the Commonwealth if he ever contacted the investigating detective to advise him he was not guilty of the charges. Appellant objected to the question, and [the trial] court sustained the objection. [The court] immediately instructed the jury to disregard the question and promptly offered a curative instruction to the jury. Appellant moved for a mistrial, and the motion was denied. Prior to offering final instructions to the jury, [the trial] court asked Appellant's attorney if he would like an additional curative instruction about a defendant's right to remain silent. Appellant's attorney declined [the court's] offer and made a "strategic decision" to not "highlight it."

(*Id.* at 6-8) (record citations omitted).

On October 23, 2015, the jury found Appellant guilty of the above-cited offenses. The record is somewhat less than clear whether Appellant filed either a post-trial or post-sentence motion, and, if so, what was raised in any such motion. At sentencing, the trial court referenced a post-trial motion filed by Appellant. (**See** N.T. Sentencing, 1/19/16, at 3). However, no motion is listed in the docket or contained in the certified record.[3] The trial court expressed confusion about whether the motion was to dismiss or for judgment of acquittal, and ultimately chose to treat it as both. (**See id.**

_____

[3] This Court made an unsuccessful inquiry to the trial court in an attempt to obtain the motion.

- 7 -

at 3-5). The trial court specifically stated on the record that the motions concerned the **sufficiency** of the evidence. (*See id.* at 4-5). It immediately denied the motion to dismiss but ordered briefing on the motion for judgment of acquittal. (*See id.* at 5).

The docket does not demonstrate that Appellant ever filed his previous motion for a judgment of acquittal, a post-sentence motion challenging the weight of the evidence, or the memorandum of law ordered by the trial court.[4] On April 12, 2016, the Commonwealth filed a memorandum of law in response to Appellant's motion. That memorandum did not address the sufficiency of the evidence but rather addressed the weight of the evidence. (*See* Commonwealth's Memorandum of Law, 4/12/16, at 7-11). On June 13, 2016, the trial court issued an order denying Appellant's post-sentence motion. The order does not address whether the motion concerned the weight or the sufficiency of the evidence. (*See* Order, 6/13/16, at unnumbered page 1). On the docket, there is a notation listed under the entry, "[o]rder [d]enying [p]ost-[s]entence [m]otion", which states "[m]otion filed on 1/19/16" (the date of sentencing). (*See* Docket, 6/13/16, at 10). However, as noted above, there is no separate listing of a motion being filed on that date and there is no such motion contained in the certified record.

_____

[4] Again, we note that we attempted to obtain the relevant documents from the trial court but it was unable to locate them.

On June 15, 2016, Appellant filed a timely notice of appeal. On June 20, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on July 6, 2016. *See id.* On August 16, 2016, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

I. [Was] the verdict against the clear weight of the evidence where: (1) the [victim] gave multiple conflicting accounts of the abuse; (2) the [victim's] claim that Appellant showed her pornography on his iPad was refuted by a forensic analysis of the device; and (3) DNA analysis of the contents of a trash can in the bedroom where the alleged assaults took place discredited the [victim's] accounts of the assaults?

II. Did the trial court err in failing to grant Appellant's request for a mistrial where the Commonwealth impermissibly used Appellant's silence to imply his guilt in violation of his right against self-incrimination?

III. Did the trial court err in excluding testimony that the [victim] regularly viewed hard-core pornography where she had previously denied visiting pornographic websites and where Appellant's proffered evidence would have directly impeached the [victim's] credibility?

IV. Did the trial court err in preventing Appellant from introducing a story the [victim] had written into evidence where the main character of the story shared many characteristics with the [victim] and the story constituted impeachment evidence?

(Appellant's Brief, at 5) (unnecessary capitalization omitted).

In his first claim, Appellant challenges the weight of the evidence. (*See id.* at 12). Prior to addressing the merits of Appellant's claim, we must decide if it is properly before us.

We have long held that this Court cannot consider, in the first instance, a claim that the verdict is against the weight of the evidence. *See Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003). Here, as discussed above, there is no written motion challenging the weight of the evidence. While Appellant did make oral motions at sentencing, those were a motion to dismiss and a motion for judgment of acquittal. (*See* N.T. Sentencing, 1/19/16, at 3-5). The proper vehicle for challenging the weight of the evidence is a motion for a new trial, not a motion to dismiss or a motion for judgment of acquittal. *See* Pa.R.Crim.P. 607 and 608; *see also Commonwealth v. Emanuel*, 86 A.3d 892, 894 (Pa. Super. 2014), *appeal denied*, 95 A.3d 276 (Pa. 2014). Moreover, Appellant did not disagree at sentencing with the trial court's characterization that his motions were a challenge to the sufficiency of the evidence. (*See* N.T. Sentencing, 1/19/16, at 4-5). Because of this, the Commonwealth argues that we should find Appellant's claim waived. (Commonwealth's Brief, at 18-20).

While we are displeased by Appellant's failure to properly file his written post-trial and post-sentence motions, it is evident that he served something on the trial court and the Commonwealth that challenged the weight of the evidence, because the Commonwealth addressed this issue in

- 10 -

its memorandum of law. (**See** Commonwealth's Memorandum of Law, 4/12/16, at 7-11). Moreover, in its 1925(a) opinion, the trial court did not discuss waiver and rather addressed Appellant's claim on the merits. (**See** Trial Ct. Op., at 9-11). Because of this, despite Appellant's failure to file his motion properly, we will address the merits of his claim.

Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949

- 11 -

A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation

omitted).

In its Rule 1925(a) opinion, the trial court explained its decision

thusly:

> Here, we find that the weight of the evidence clearly supports the jury's verdict. The victim testified in court and stated in the forensic interview that Appellant sexually abused her three separate times. The victim was consistent in her claims of Appellant's abuse; mere conflicts in some details of that abuse would not permit granting a new trial. The jury heard from both the victim and Appellant and made its own credibility determinations by finding Appellant guilty of all charges.
>
> Further, DNA evidence corroborated the victim's testimony. The victim testified that paper towels containing Appellant's sperm were thrown into the trash can in the guest bedroom following the second incident of abuse. DNA analysis of two paper towels confirmed a match with Appellant's DNA profile. Also, one of the towels was indicative of saliva. The DNA evidence confirms the victim's claim that, after the second incident of abuse, she was forced to clean up Appellant's ejaculate and throw it into the trash can[,] which contained materials dated as far back as January of 2014.
>
> Appellant wrongfully relies on [forensic biology expert] Arthur Young's testimony to justify granting a new trial. The fact that another lab offers confirmatory testing of saliva is not sufficient evidence to undermine the credibility of the victim and her corroborated testimony.
>
> Appellant also wrongfully relies on the fact that Appellant's iPad did not contain evidence of pornography. Appellant would have us rely on the incontrovertible physical facts rule to grant a new trial because of the lack of pornography on Appellant's iPad and Young's testimony. The rule states that "where the testimony of a witness is contradicted by incontrovertible physical facts, the testimony of such witness cannot be accepted, if being either mistaken or false, and a verdict based on it will not be sustained." *Lamp v. Pa. R.R. Co.*, 158 A. 269, 271 (Pa. 1931) (citations omitted). However, the rule can only

be applied where the facts are positive, clear, indisputable, and certain. ***Commonwealth v. Newman***, 470 A.2d 976, 979 (Pa. Super. 1984) (citations omitted).

The rule does not apply here because the lack of pornography on Appellant's iPad and Young's testimony that his laboratory offers confirmatory saliva testing are not "positive, clear, indisputable, and certain" facts that refute the victim's testimony or the DNA evidence. If anything, the victim's testimony is supported by the incontrovertible physical facts of her knowledge of the location of the paper towels and the corroborating DNA evidence. Additionally, Detective Schirmer of Upper Southampton Township Police testified that individuals can clear their internet history at the touch of a button.

We find here that the weight of the evidence supports the jury's verdict. As such, Appellant's argument fails.

(Trial Ct. Op., at 10-11).

We agree with the trial court's able assessment. Here, the jury chose to believe the victim and not Appellant. "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." ***Commonwealth v. Lee***, 956 A.2d 1024, 1029 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citation omitted). This Court cannot substitute our judgment for that of the trier of fact. ***See Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (2014). This issue does not merit relief.

In his second claim, Appellant contends that the trial court erred in denying his motion for a mistrial. (***See*** Appellant's Brief, at 15). We disagree.

- 13 -

The following standards govern our review of the denial of a motion for mistrial:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. By nullifying the tainted process of the former trial and allowing a new trial to convene, declaration of a mistrial serves not only the defendant's interest but, equally important, the public's interest in fair trials designed to end in just judgments. Accordingly, the trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. In making its determination, the court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice. Our review of the resulting order is constrained to determining whether the court abused its discretion. Judicial discretion requires action in conformity with [the] law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Commonwealth v. Jaynes*, 135 A.3d 606, 615 (Pa. Super. 2016), *appeal denied*, 145 A.3d 724 (Pa. 2016) (citation omitted). "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Commonwealth v. Smith*, 131 A.3d 467, 475 (Pa. 2015), *cert. denied*, 137 S.Ct. 46 (2015) (citation omitted). "The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion."

*Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008), *appeal denied*, 966 A.2d 571 (Pa. 2009) (citation omitted).

Here, the following occurred at trial during the cross-examination of Appellant:

> [The Commonwealth]:  . . . at no point in time did you ever contact Detective Schirmer to tell him that you were not guilty of these charges, correct?
>
> [Defense Counsel]:  Objection, Your Honor.  Sidebar.
>
> [The Trial Court]:  Sustained.  The jury will disregard the question.
>
> [Defense Counsel]:  Am I allowed to make a motion?
>
> [The Trial Court]:  You may.

(N.T. Trial, 10/23/15, at 296-97).   During, a sidebar discussion, the following occurred:

> [The Commonwealth]:  My understanding is that I can make that argument.
>
> [Defense Counsel]:  I move for a mistrial.
>
> [The Commonwealth]:  I can make that argument.
>
> [The Trial Court]:  You can make what argument?
>
> [The Commonwealth]:  I can make the argument that he had the opportunity to speak with him at any time and he chose not to.  He's claiming his innocence.  I can make that argument.
>
> [Defense Counsel]:  I submit that it's in violation.  He's got a lawyer so now he's hiding something.  That's what [the Commonwealth's] saying.
>
> [The Commonwealth]:  I'm not saying that.  I'm saying he had the opportunity to speak and maintain—he's maintaining his

- 15 -

innocence. He's saying he's not guilty of these charges. Well, he had the opportunity at every turn to speak and he chose not to. And I think I can argue that. He's brought it up, he's the one that got up on the stand and said I'm not guilty. I knew what I was being charged with.

\* \* \*

[The Trial Court]: . . . But just the fact that he's innocent does not mean that you can now go through some—ask him questions.

Now, if he was there and he said it, if Detective Schirmer is at the house and he didn't speak to him, then that's different. But I think the way [the Commonwealth's] question is couched suggests he has some sort of affirmative obligation to come forward and he has none.

[The Commonwealth]: Then tell me exactly how you want me to phrase it.

[The Trial Court]: I don't want you doing it.

[Defense Counsel]: My position is the cat is out of the bag, she's already polluted the jury with that.

[The Trial Court]: Well, your motion is denied. Your motion is denied.

[Defense Counsel]: Okay.

[The Trial Court]: Is there anything else you want to say to the jury? I've already said sustain the objection. I've already commented on it immediately. Is there anything else you want me to do?

[Defense Counsel]: Well, you could admonish the prosecutor but that's not going to happen either.

[The Trial Court]: I thought it was clear I said no, you can't do that.

\* \* \*

[The Trial Court]: . . . so is there any other instruction you want me to give the jury?

If you want me to tell them about the fact that a defendant has no obligation, and that at that point he had counsel, and if the authorities wanted to talk to him they should have gone through is counsel?

[Defense Counsel]: Yes. You denied my motion, so yes, I would request to tell them that the police are not permitted to speak to him following representation by counsel.

(*Id.* at 297-98, 300-02, 304-05). The trial court then instructed the jury as

follows:

Referring to the exchange that happened before we broke, at the time of [Appellant's] preliminary hearing he was represented by counsel, and under our system of justice, a defendant — a detective cannot speak directly to a defendant unless he has the permission of the defendant's counsel. Once he has representation he has to speak through counsel.

Is that acceptable?

[Defense Counsel]: Thank you, Your Honor.

(*Id.* 307). Further, prior to charging the jury, the following occurred:

[The Trial Court]: . . . The only other question I have, and it's entirely up to you, I have sustained your objection about the question about coming forward—your coming forward and affirmatively speaking. I could charge the jury if you wanted, it is up to—that it's up to the defendant in every criminal trial whether or not to testify, and a defendant has an absolute right to remain silent after they're arrested. If you want me to do that, I will say that. Or I will not.

[Defense Counsel]: I think you covered it in your instruction.

[The Trial Court]: All right. So you don't want me to highlight it?

[Defense Counsel]: No.

[The Trial Court]:  In other words, this is a strategic decision on your part not to highlight it?

[Defense Counsel]:  Yes, Your Honor.

(*Id.* at 351).

"[A] mistrial is not necessary where the [trial court's] cautionary instructions are adequate to overcome any possible prejudice." ***Commonwealth v. Rega***, 933 A.2d 997, 1016 (Pa. 2007), *cert. denied*, 552 U.S. 1316 (2008) (citation omitted).  Further, "[w]hen the trial court provides cautionary instructions to the jury in the event the defense raises a motion for a mistrial, [t]he law presumes that the jury will follow the instructions of the court."  ***Parker***, ***supra*** at 319 (citation and internal quotation marks omitted).

The reference in this matter was fleeting.  The trial court sustained the objection before Appellant could answer the question and immediately following the testimony, the trial court provided an adequate cautionary instruction to the jury.  The trial court asked Appellant if he wanted an additional instruction during the jury charge, and Appellant refused. Further, Appellant does not point to anything in the record that shows that the jury did not follow the cautionary instruction.  Given this, Appellant has not shown that he was prejudiced by a fleeting reference to his post-arrest silence.  Accordingly, the trial court did not misapply the law or abuse its

discretion in denying Appellant's motion for a mistrial. *See Jaynes*, *supra* at 615.

In his final two claims, Appellant challenges the trial court's refusal to admit the details of the pornographic websites allegedly visited by the victim and its refusal to admit a fictional piece written by the victim because he argues the evidence was relevant. (*See* Appellant's Brief, at 23 and 28). We disagree.

Our standard of review is settled.

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error.
>
> The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.
>
> Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. . . . [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. . . . We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Williams*, 91 A.3d 240, 248-49 (Pa. Super. 2014) (*en banc*) (quotation marks, some indentations, and citations omitted).

This Court has further discussed the issue of relevancy as follows. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence. *See* Pa.R.E. 401. "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Loughnane*, 128 A.3d 806, 818 (Pa. Super. 2015), *appeal granted in part*, 2016 WL 5819328 (Pa. July 19, 2016) (citation omitted). This Court has stated:

> Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
>
> Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged.

***Commonwealth v. Broaster***, 863 A.2d 588, 592 (Pa. Super. 2004), *appeal denied*, 876 A.2d 392 (Pa. 2005) (quotation marks, footnote and citation omitted).

We first address the issue of the pornography. We wish to clarify, as the trial court did, that it did not bar Appellant from mentioning the victim's independent viewing of pornography, but refused Appellant's request to admit evidence of the details of the sites the victim allegedly viewed. (***See*** Trial Ct. Op., at 7, 18-19). To the extent that Appellant claims otherwise, he misstates the record. (***See*** Appellant's Brief, at 24-28). Moreover, Appellant devotes the majority of his argument on this issue to a discussion of whether viewing of pornography is covered by the Rape Shield Law, ***see*** 18 Pa.C.S.A. § 3104(a). (***See*** Appellant's Brief, at 24-28). However, as the trial court correctly notes, it specifically found that the Rape Shield Law did not cover the viewing of pornography. (***See*** Trial Ct. Op., at 7, 18-19). Rather, the trial court stated that Appellant had not established the "content of the pornography viewed[.]" (***Id.*** at 18).

At no point in his brief does Appellant address the trial court's main concern, expressed, as we discuss below, during the hearing, that prior to addressing the issue of relevance, Appellant had to lay a proper foundation for the admission of the evidence and that he had not done so at the two pre-trial hearings on this issue.

Our review of the record demonstrates that at the initial hearing on this issue, the trial court specifically warned Appellant that he would have to demonstrate "the specific shots of pornography that you intend to use and the date and the content so that I can rule appropriately on that." (N.T. Hearing, 8/18/15, at 8). Later, the trial court reiterated:

> . . . The question here is the content, and I want to know specifically what the content is that you intend to introduce. I want to see the slides that you would present to the jury for me to be able to rule on that. . . . [Y]ou need to establish that it was her that looked at the site. Just the fact that she had that—a device, you would have to establish and lay an appropriate foundation that she was the one accessing the sites for it to be admissible. . . . I'm saying you have to lay the foundation. Your mere assertion to me in oral argument that she was the only one who had access is not enough. You will have to produce evidence. . . .

(*Id.* at 10-12). The trial court then continued the hearing for Appellant to produce expert testimony on this issue. (*See id.* at 17, 27).

At the continued hearing, Appellant's expert, Louis Cinquanto, testified that he could not retrieve the specific images viewed by the victim from her computer but, instead, had to use a third-party website that archives every website on the web by regularly taking snapshots of the websites. (*See* N.T. Hearing, 9/21/15, at 30). The trial court pointed out that, because Mr. Cinquanta took the images he used in the expert report not from the victim's computer but from a third party's picture of the website, Appellant could not authenticate them without bringing in an employee of that third party because otherwise his testimony was hearsay. (*See id.* at 31-32).

- 22 -

Moreover, the testimony at the hearing also established that, for many of the websites, there were not snapshots of the date in question and, because of this, Appellant could not demonstrate what the victim might have seen on the day she allegedly accessed the website. (**See e.g. id.** at 38-40). The trial court also noted that on some of the websites the snapshot only showed the face page, not the contents of the website; Appellant could not demonstrate that the victim had gone beyond the face page. (**See e.g. id.** at 52-53). The trial court continued to note that Appellant was not laying a sufficient foundation that the victim actually accessed and used the device, that the sites were relevant, and that there needed to be a foundation with respect to the third-party program used by Appellant's expert. (**See id.** at 74-75). Further, the trial court found several of the sites were either not pornographic and/or contained a combination of pornography and other materials and there was no way to determine what part of the website the victim accessed. (**See e.g. id.** at 76-77, 90-91, 95-96).

At the conclusion of the hearing, the trial court stated that while it believed the specific contents of the websites were not relevant, it would not make a ruling on that basis until trial, but that even if certain of the sites were relevant, Appellant needed to be able to "authenticate it." (**Id.** at 100; **see id.** at 99-100). The court specifically described the foundation Appellant would need to lay before it would admit the details of the pornography sites. Appellant would need to:

 . . . establish that, one, that what the site was that was viewed on the particular date.

You would want to have to bring somebody, I believe, in from [the third-party website that photographs websites] to establish . . . that they took a snapshot of those dates of these sites. Then you're going to have to establish that [the victim], in fact, at least by circumstantial evidence viewed it. And then you are going to have to establish that somehow it's relevant.

Those are hurdles for any piece of evidence. So I don't know whether you want to—I can only tell you where we are right now, and right now I don't see the relevance of any of this. If you do think it's relevant at trial, you'll come to sidebar and let me know.

But I will tell you without the person from—somebody from [the third-party website that photographs websites] who can say what the sites are, you are not going to be able to lay a foundation.

(*Id.* at 102-03).

Appellant does not discuss this issue in his brief, and does not cite to any point at trial where he attempted to lay a foundation for admission of this material. (*See* Appellant's Brief, at 24-28). Moreover, Appellant does not cite to any portion of the record wherein he attempted to introduce this evidence at trial and the trial court held that it was not relevant. (*See id.*) We remind Appellant that it is not this Court's responsibility to comb through the record seeking the factual underpinnings of his claim. *See Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 n.5 (Pa. Super. 1997) ("In a record containing thousands of pages, this [C]ourt will not search every page to substantiate a party's incomplete argument"); *see also Langman v. Keystone Nat'l Bank & Trust Co.*, 672 F.Supp.2d 691,

694 (E.D. Pa. 2009), *aff'd*, 502 Fed.Appx.2d 220 (3rd Cir. 2012) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs—or, for that matter, in the thousands of pages of record that accompany them.")[5] (citation omitted)).

In any event, even if Appellant's argument did not suffer from these fatal flaws, he has not shown that he was prejudiced. Our Supreme Court has stated:

> An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. In reaching that conclusion, the reviewing court will find an error harmless where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant. . . .

*Commonwealth v. Mitchell*, 839 A.2d 202, 214-15 (Pa. 2003) (citation and footnote omitted).

Despite Appellant's protestations to the contrary, the record clearly shows that this issue of the victim's watching of pornography was placed before the jury. Defense counsel elicited testimony from the victim that she had pornographic images on her computer that she used as masturbatory aids and that, when Appellant requested to see pornography, this is what

---

[5] "While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason." *Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh*, 771 A.2d 39, 43 (Pa. Super. 2001).

she showed him. (***See*** N.T. Trial, 10/21/15, at 155-56). He also obtained from the victim that her mother and Appellant punished her for viewing pornography on her electronic devices. (***See id.*** at 159). Further, Appellant established through the testimony of Detective Schirmer that the victim's testimony at trial with respect to pornography was inconsistent with her testimony at the preliminary hearing that she never viewed on-line pornography. (***See*** N.T. Trial, 10/23/15, at 73-74).

Moreover, Appellant elicited testimony from the victim's Mother that she was concerned about the victim's on-line activities, including viewing pornography, and that she regularly punished the victim for this. (***See id.*** at 143-44). Lastly, Appellant particularly pointed out the victim's viewing of inappropriate websites during his closing argument and implied that this was where she learned about the sexual activity testified to at trial. (***See id.*** at 357, 359-60, 367-68, 377). Thus, it is clear that while the specific details of what websites the victim viewed were not placed in front of the jury, the jurors were well aware that the victim had viewed pornography on her own. Therefore, Appellant has not shown that he suffered more than *de minimis* prejudice from not being allowed to place the specific details of the pornography sites before the jury. ***See Commonwealth v. Passmore***, 857 A.2d 697, 711 (Pa. Super. 2004), *appeal denied*, 868 A.2d 1199 (Pa. 2005) (error is harmless when "the prejudice was *de minimis*[.]") (citation omitted).

Appellant last claims that he was prejudiced when the trial court did not allow him to introduce a "short story" written by the victim where the main character "shared her own characteristics and diagnoses." (Appellant's Brief, at 28; *see id.* at 30). However, we find that Appellant waived this claim.

Preliminarily, we note it is well-settled that:

> [i]f an appellant has properly preserved an issue for appellate review, the appellant must include in his or her brief a "statement of the case" including a "statement of place of raising or preservation of issues." Pa.R.A.P. 2117(c). This information must also be referenced in the argument portion of the appellate brief. Pa.R.A.P. 2119(e).

*Commonwealth v. Baker*, 963 A.2d 495, 502 n.5 (Pa. Super. 2008), *appeal denied*, 992 A.2d 885 (Pa. 2010). Further, "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." *Id.* at 502 n.6 (citations omitted).

In this case, neither Appellant's statement of the case nor the argument section of his brief contains a specific "statement of place of raising or preservation of [his] issues" and it is not this Court's responsibility to scour the certified record, including two pre-trial transcripts and a lengthy trial transcript, to prove that Appellant preserved this issue. Pa.R.A.P. 2117(c); *see Baker*, *supra* at 502 n.5, n.6; (Appellant's Brief, at 6-10, 28-30).

"[I]t is an appellant's duty to ensure that the certified record is complete for purposes of review." ***Commonwealth v. Reed***, 971 A.2d 1216, 1219 (Pa. 2009). "[A]n appellate court cannot consider anything which is not part of the record in the case . . . because for purposes of appellate review, what is not of record does not exist." ***Commonwealth v. Johnson***, 33 A.3d 122, 126 n.6 (Pa. Super. 2011), *appeal denied*, 47 A.3d 845 (Pa. 2012) (citations and internal quotation marks omitted).

In the instant matter, while both Appellant and the trial court claim that this issue was raised at the August 18, 2015 hearing, we find nothing in the record to support this contention. (***See generally*** N.T. 8/18/15, at 2-52; ***see also*** Appellant's Brief, at 9; Trial Ct. Op., at 6-7). The only discussion we can find with respect to this issue occurred during trial. After finding that statements made in counseling are inadmissible, the trial court asked defense if he "want[ed] to make a record regarding . . . the story[.]" (N.T. Trial, 10/21/15, 139). Counsel replied, "no." (***Id.***). A brief discussion then ensued about there being no copy of the story for the Commonwealth. The trial court stated, "the [victim] did a paper about a fictitious person who had the same diagnoses and talked about the person being a liar." (***Id.***). Defense counsel agreed that this summary was correct; the trial court stated it would not allow it "if that's the extent of the offer." (***Id.*** at 140). Defense counsel did not object. (***See id.***).

Thus, there is no record of the basis for Appellant's request to admit the story. There is nothing that demonstrates that he raised his claim of the exclusion of relevant evidence below. While the trial court's ruling on this issue is of record, there is nothing that shows that Appellant objected to it or otherwise preserved this issue for our review.

Again, we note, "our review is limited to those facts which are contained in the certified record" and what is not contained in the certified record "does not exist for purposes of our review." ***Commonwealth v. O'Black***, 897 A.2d 1234, 1240 (Pa. Super. 2006) (citations omitted). Here, because the majority of any discussion regarding Appellant's attempt to admit the story is *dehors* the record, Appellant waived this issue on appeal.[6] ***See O'Black***, ***supra*** at 1240; ***see also Reed***, ***supra*** at 1219 (finding waiver and declining to review appellant's issue with incomplete record); ***Johnson***, ***supra*** at 126 (declining to reach merits of appellant's issue where it was deemed waived); ***Commonwealth v. Rovinski***, 704 A.2d 1068, 1073 (Pa. Super. 1997), *appeal denied*, 723 A.2d 1024 (Pa. 1998) (waiving appellant's claim of counsel's ineffective assistance based on his opening

---

[6] We note that, "[w]here portions of a proceeding are unrecorded, appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures." ***Rovinski***, ***infra*** at 1073 (citing Pa.R.A.P. 1923). The record reflects that Appellant made no attempt to comply with the requirements of Rule 1923.

statement where he failed to provide transcript of statement in certified record).

Appellant's issues are either waived or lack merit. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2017